**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CORBIN D. JONES, # 01-30-1989-46,** | ) | |
| **and LEKEDRIEON RUSSELL,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 17-cv-349-JPG** |
| | ) | |
| **NEILL MOONEY,** | ) | |
| **MT. VERNON JUSTICE CENTER** | ) | |
| **COUNTY JAIL,** | ) | |
| **C. GREENWOOD,** | ) | |
| **JENNIFER ROBERTS,** | ) | |
| **A. BLANDFORD,** | ) | |
| **J. CARLTON,** | ) | |
| **B. HUFF,** | ) | |
| **A. MEYERS,** | ) | |
| **LT. HAYNES,** | ) | |
| **LT. BONNIE MAY,** | ) | |
| **C/O SPARTEGUES,** | ) | |
| **CAPT. MOUNT,** | ) | |
| **C/O JEFF CLARK,** | ) | |
| **NURSE SHIRLEY,** | ) | |
| **DR. PAULIUS,** | ) | |
| **C/O FORTAG,** | ) | |
| **C/O EDWARDS,** | ) | |
| **DEPUTY TRAVIS SCOTT,** | ) | |
| **C/O NANCY,** | ) | |
| **C/O CONWAY,** | ) | |
| **and C/O McKENNETH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiffs, who are currently incarcerated in the Jefferson County Justice Center ("the jail"), have jointly brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Their claims include being confined in a cell contaminated with another inmate's blood, denial of

medical attention for possible exposure to disease, and denial of out-of-cell recreation. Jones raises an individual claim that his legal mail has been opened and destroyed, and that medical care for injuries he sustained before his arrest was delayed or denied. Russell claims that he was denied medication and treatment for his mental health conditions. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A .

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

The Court must also assess whether the claims brought by the two Plaintiffs in this case are properly joined in a single action. As shall be explained below, Plaintiff Russell's claims shall be severed into a separate action, because the two Plaintiffs' distinct claims are not appropriately joined in this case. Because each Plaintiff's claims shall proceed in a separate action, the required merits review under § 1915A shall be conducted after the cases have been severed.

## The Complaint

The Complaint was submitted in two parts. The first section (filed as Doc. 1) is signed by both Plaintiffs and consists of 20 pages. Two pages in this section contain cursory references to Plaintiff Jones' claims for deliberate indifference, interference with legal mail, and denial of recreation (Doc. 1, pp. 5, 7), but the majority of the factual allegations are identified with Plaintiff Russell's name.[1] The second section (containing 70 pages and filed as Doc. 1-1) begins

---

[1] Most of the factual allegations in Doc. 1 are worded, for example: "I as Lekedrieon Russell . . . ," (Doc. 1, p. 10), and are thus clearly associated with this Plaintiff, and not Plaintiff Jones.

with a page bearing Plaintiff Jones' name and address. The remainder of that document relates to Plaintiff Jones' claims.

Plaintiff Russell alleges that on March 29, 2017, a cellmate (Joshua Heart) attempted to kill himself by cutting both his wrists (Doc. 1, pp. 13, 16, 18). Russell pressed the intercom button repeatedly to summon help, but no jail staff members responded until about 20 minutes later. (Doc. 1, pp. 10, 13, 16-18). Meanwhile, Russell tore his underwear to make a tourniquet in an attempt to stop Heart's bleeding. (Doc. 1, p. 18). The cell "look[ed] like a blood bath" after Heart cut himself, and Russell got Heart's blood all over his face, hands, and clothes. (Doc. 1, pp. 13, 16, 18). Heart is a "known drug addict," so Russell asked to be tested for HIV, Hepatitis-C, and tuberculosis, but no testing has been performed. (Doc. 1, pp. 5, 13, 20). For at least 4 days after the suicide attempt, the blood was not cleaned up from the cell or surrounding area, including the prisoners' meal table, and Russell continued to be exposed to it. (Doc. 1, pp. 5, 16). Russell was allowed to shower, but was not given any cleaning supplies for the cell. (Doc. 1, pp. 14, 18).

Russell had previously been diagnosed with depression, ADHD, bipolar, and PTSD. (Doc. 1, pp. 17, 19). Since witnessing Heart's suicide attempt, Russell has experienced sleep disturbances, shaking, and cold sweats. (Doc. 1, pp. 16-17, 19-20). He requested Captain Mount and other staff to help him get mental health treatment, but his requests have been ignored. (Doc. 1, p. 19). Further, he has not received his regular prescription medication for his pre-existing mental health conditions.

Russell also alleges that he "begged" to be allowed out of the cell for recreation, but Jennifer Roberts refused to let him out for 3 days in a row, and told him to stop pressing the intercom button. (Doc. 1, pp. 14, 18).

Both Plaintiffs seek damages for the violations of their rights. (Doc. 1, pp. 7, 9).

Turning to the second section of the Complaint (Doc. 1-1), after the cover page bearing Plaintiff Jones' name and address, Jones includes a copy of a photograph of purported drug evidence seized from his home. (Doc. 1-1, p. 2). This page is identical to a page contained in another Complaint filed by Plaintiff Jones in a different action filed in this Court on April 3, 2017, *Jones v. Mooney*, Case No. 17-cv-337-JPG (Doc. 1, p. 6 in that case). Jones continues with a narrative describing the search of his room by Officers Mooney and Greenwood on February 13, 2017, which culminated in his arrest. (Doc. 1-1, pp. 3-4). Many of these allegations overlap with matters raised in Case No. 17-337. However, in the present case, Jones raises a distinct allegation that after Mooney ordered another unidentified officer to put him in handcuffs, that officer applied the handcuffs so tightly that Jones' hands became badly swollen, preventing jail officials from taking his fingerprints for 3 days. (Doc. 1-1, p. 4).

The remainder of the 70 pages in Doc. 1-1 consists of many piecemeal handwritten statements, interspersed with copies of documents such as police reports from Jones' arrest, excerpts from the Illinois Constitution, receipts from purchases at the jail, jail menus, and the state court order setting bond after Jones' arrest. The narrative portions include some description of Jones being exposed to blood from the cellmate's suicide attempt and his inability to get cleaning supplies from jail staff (Doc. 1-1, pp. 9, 12, 70), officials opening his incoming legal mail and reading his outgoing legal mail (Doc. 1-1, pp. 10, 14, 20-21, 44-45, 59), delay and denial of medical care for acid burns Jones had sustained before his arrest (Doc. 1-1, pp. 23, 25, 42-43, 47, 50-51, 63), denial of out-of-cell recreation (Doc. 1-1, pp. 13, 22, 61), and various other complaints about the jail conditions.

## Discussion

Based on the allegations of the Complaint, Russell's and Jones' claims may be described in the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** Deliberate indifference claim against Mount for failing to provide Russell with treatment or medications for his diagnosed mental health conditions or for his mental health symptoms that developed after witnessing the cellmate's suicide attempt;

**Count 2:** Deliberate indifference claim for the failure to provide Russell with medical testing for communicable diseases following his exposure to the cellmate's blood;

**Count 3:** Deliberate indifference claim for the failure to provide Russell with cleaning supplies or to clean the areas contaminated with blood;

**Count 4:** Deliberate indifference claim against Roberts for refusing to permit Russell to leave the cell for recreation;

**Count 5:** Excessive force claim against the officers who arrested Jones, for applying handcuffs to Jones' wrists so tightly that his hands were swollen for several days;

**Count 6:** Deliberate indifference claim for the failure to provide Jones with medical testing for communicable diseases following his exposure to the cellmate's blood;

**Count 7:** Deliberate indifference claim for the failure to provide Jones with cleaning supplies or to clean the areas contaminated with blood;

**Count 8:** Deliberate indifference claim against Scott, Mount, Haynes, and Nurse Shirley for failing to provide Jones with medical treatment for burns and cuts on his arms sustained before his arrest;

**Count 9:** First Amendment claim for the improper opening and destruction/loss of Jones' legal mail, against Edwards, Spartegues, Jeff, and Roberts;

**Count 10:** Deliberate indifference claim against Haynes and Roberts for the failure to permit Jones to leave the cell for recreation;

**Count 11** Deliberate indifference claim for placing Jones in a cell with insufficient heat, bedding, or clothing; exposing him to black mold, rusty drinking water, and insects; and serving him spoiled milk.

District courts must accept joint complaints filed by multiple prisoners, but only if the criteria of permissive joinder under Federal Rule of Civil Procedure 20 are satisfied. *Boriboune v. Berge*, 391 F.3d 852 (7th Cir. 2004). Rule 20 authorizes individuals to join as plaintiffs in bringing a single action, if: (A) they "assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; ***and*** (B) any question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV. P. 20(a)(1)(A)-(B) (emphasis added). A district court may also turn to other civil rules to manage a multi-plaintiff case. If appropriate, claims may be severed pursuant to Rule 20(b), pretrial orders may be issued providing for a logical sequence of decision pursuant to Rule 16, parties improperly joined may be dropped pursuant to Rule 21, and separate trials may be ordered pursuant to Rule 42(b). *Boriboune*, 391 F.3d at 854.

District courts are given "wide discretion . . . concerning the joinder of parties." *See Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001) (citing *Intercon Research Assoc., Ltd. v. Dresser Indus., Inc.*, 696 F.2d 53, 56 (7th Cir. 1982)). The Seventh Circuit has held that "this discretion allows a trial court to consider, in addition to the requirements of Rule 20, 'other relevant factors in a case in order to determine whether the permissive joinder of a party will comport with the principles of fundamental fairness.'" *Chavez*, 251 F.3d at 632 (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)). And if joinder would

create "prejudice, expense, or delay" the court may deny a request for joinder. *Id.* (citation omitted).

The counts enumerated above include 4 claims raised by Plaintiff Russell (Counts 1-4) and 7 claims raised by Plaintiff Jones' factual statements (Counts 5-11). Some of the claims arose from both Plaintiffs' confinement together in the cell at the Jefferson County Justice Center: Counts 2 and 6 relating to both Plaintiffs' exposure to blood; Counts 3 and 7 for the lack of cleaning supplies and ongoing exposure to blood contamination; and Counts 4 and 10 for denial of out-of-cell recreation. However, Count 1 (denial of mental health treatment) is unique to Russell. Likewise, Counts 5, 8, 9, and 11 are matters asserted only by Jones – and the incident underlying Count 5 occurred outside the jail.[2]

Some of the individual Plaintiffs' claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences," but others clearly do not. *See* FED. R. CIV. P. 20. In particular, each Plaintiff's distinct medical condition(s) were either treated or denied treatment on an individual basis. The legal question of whether each Plaintiff's medical (including mental health) care violated constitutional standards will be an individualized determination based on the facts unique to each Plaintiff's situation. In addition, Jones' claims for excessive force, mishandling of his legal mail, and being housed in a cold, contaminated cell, are completely distinct from Russell's claims. Many of the claims, therefore, do not involve a "question of law or fact common to these persons."

Even if Rule 20 were satisfied, the Court can still require the Plaintiffs to proceed separately with their claims if joinder would cause "prejudice, expense, or delay." *See Chavez*, 251 F.3d at 632; FED. R. CIV. P. 20(b). In this case, allowing the Plaintiffs to proceed together

---

[2] Jones shall note that Count 5 may be subject to further severance into a separate case pursuant to *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) (unrelated claims against different defendants belong in separate lawsuits).

will foreseeably delay, complicate, and increase the costs of litigating otherwise straightforward claims, resulting in prejudice to the Plaintiffs and Defendants. The Defendants who are involved in Russell's claims have nothing to do with the excessive force claim raised by Jones in Count 5, and would likely be prejudiced if this claim by Jones were to proceed together with Russell's claims. Likewise, Jones' claims relating to his legal mail and cell conditions that were unique to him, would add unnecessary complication to the consideration of Russell's claims. Accordingly, The Court finds that joinder of the Plaintiffs in a single action going forward is not appropriate.

Having determined that joinder of the Plaintiffs is not proper in this case, the Court looks to Rule 21 of the Federal Rules of Civil Procedure for guidance on how to proceed. Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The Court may also sever any claim against a party." FED. R. CIV. P. 21. Consistent with Rule 21, the Court shall enter an order in the disposition below that "drops" the misjoined party from this action, as follows:

A. **Corbin D. Jones**, the first-named Plaintiff, shall proceed as the *only* Plaintiff in this action going forward, and he shall be obligated to pay a filing fee for *this* action. Jones' case shall include Counts 5-11 above;

B. **Lekedrieon Russell** shall be terminated as a Plaintiff in this action, and no filing fee for this action shall be assessed to him. A new case shall be opened for Plaintiff Russell, containing Counts 1-4 above. Russell's claims shall undergo a merits review in the newly-opened case, and he shall pay a filing fee in that case.

A separate order shall be entered in each case pursuant to 28 U.S.C. § 1915A, to determine which claims merit further consideration by the Court.

### Filing Fees/ Motion for Leave to Proceed *In Forma Pauperis* (IFP)

When prisoner-plaintiffs file a joint lawsuit, the Seventh Circuit directs that each individual is still obligated to pay the full amount of his filing fee, either in installments or in full

if the circumstances require it, just as if he had filed an individual action. *Boriboune v. Berge*, 391 F.3d 854 (7th Cir. 2004). As such, the Plaintiffs herein will be assessed the same filing fee in their individual severed cases as they would have been required to pay if the action were to proceed as a joint lawsuit. Each Plaintiff's request to proceed *in forma pauperis* ("IFP") (Doc. 2) shall be ruled upon in a separate order in each individual case.

## Other Pending Motions

The Court reserves ruling on the joint motion for recruitment of counsel (Doc. 3) and the joint motion for service of process at government expense (Doc. 4). These motions shall be addressed in each Plaintiff's individual case after the severance. The Court also reserves ruling on each Plaintiff's individual motion for recruitment of counsel (Docs. 7, 9), which shall likewise be addressed in the individual cases.

## Disposition

**IT IS HEREBY ORDERED** that Plaintiff **LEKEDRIEON RUSSELL** is, for the reasons set forth above, **TERMINATED** as a party in this action. The Clerk is **DIRECTED** to open a new case for Plaintiff Russell, captioning the case as follows and filing the listed documents in the severed case:

> **LEKEDRIEON RUSSELL, Plaintiff, v. NEILL MOONEY, MOUNT VERNON JUSTICE CENTER COUNTY JAIL, C. GREENWOOD, JENNIFER ROBERTS, A. BLANDFORD, J. CARLTON, B. HUFF, A. MEYERS, LT. HAYNES, LT. BONNIE MAY, C/O SPARTEGUES, CAPT. MOUNT, C/O JEFF CLARK, NURSE SHIRLEY, DR. PAULIUS, C/O FORTAG, C/O EDWARDS, DEPUTY TRAVIS SCOTT, C/O NANCY, C/O CONWAY, and C/O McKENNETH, Defendants.** Documents from the original case to be filed in the severed case are:
>
> (1) This memorandum and order;
> (2) The original Complaint (Docs. 1 and 1-1);
> (3) The motion for leave to proceed IFP (Doc. 2);
> (4) The motion for recruitment of counsel (Doc. 3);
> (5) The motion for service of process at government expense (Doc. 4);

(6) The consent/non-consent to U.S. Magistrate Judge (Doc. 8); and

(7) Russell's motion for appointment of counsel (Doc. 9).

Any future motions or pleadings that Plaintiff Russell wishes to submit, shall be filed **ONLY** in his new case. The Clerk shall notify Plaintiff Russell of the new case number that he shall use for future submissions.

No service shall be ordered on any Defendant until the Court completes the required merits review pursuant to 28 U.S.C. § 1915A in the respective individual case.

Finally, each Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 31, 2017**

*s/J. Phil Gilbert*
United States District Judge