# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORBIN D. JONES, # 01-30-1989-46, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-349-JPG |
| ) | |
| NEILL MOONEY, ) | |
| MT. VERNON JUSTICE CENTER ) | |
| COUNTY JAIL, ) | |
| C. GREENWOOD, ) | |
| JENNIFER ROBERTS, ) | |
| A. BLANDFORD, ) | |
| J. CARLTON, ) | |
| B. HUFF, ) | |
| A. MEYERS, ) | |
| LT. HAYNES, ) | |
| LT. BONNIE MAY, ) | |
| C/O SPARTEGUES, ) | |
| CAPT. MOUNT, ) | |
| C/O JEFF CLARK, ) | |
| NURSE SHIRLEY, ) | |
| DR. PAULIUS, ) | |
| C/O FORTAG, ) | |
| C/O EDWARDS, ) | |
| DEPUTY TRAVIS SCOTT, ) | |
| C/O NANCY, ) | |
| C/O CONWAY, ) | |
| and C/O McKENNETH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

This matter is now before the Court for a merits review of Plaintiff Jones' claims pursuant to 28 U.S.C. § 1915A. Jones and former co-Plaintiff Lekedreion Russell jointly filed this *pro se* action on April 6, 2017. On May 31, 2017, the Court severed Russell's claims (designated as Counts 1-4) into a separate action (*Russell v. Mooney, et al.*, Case No. 17-cv-570-

JPG). (Doc. 10). The only claims remaining in the present case are those brought by Jones, designated by the Court as Counts 5-11. Most of Jones' claims involve events and conditions at the Jefferson County Justice Center ("the jail"), where Jones is currently incarcerated. He also includes an excessive force claim that arose during his arrest. The Complaint consists of 90 pages, 70 of which pertain only to Jones' claims. Jones names 20 individuals as Defendants, in addition to naming the Mt. Vernon Justice Center County Jail.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

In addition to the screening requirements of § 1915A, Federal Rule of Civil Procedure 8 sets rules for preparing an acceptable pleading.  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(d)(1) further states: "Each allegation must be simple, concise, and direct."  The purpose of these provisions is to giver fair notice of the claims:

> Under Rule 8, a complaint "must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is." *Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), *cert. denied*, 510 U.S. 868, 114 S. Ct. 193, 126 L. Ed. 2d 151 (1993); *see also Jennings v. Emry*, 910 F.2d 1434, 1436 (7th Cir. 1990) (stating that a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of what it is the plaintiff asserts).  A complaint that is prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation.

*Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994).  *See also Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Dausch v. Rykse*, 52 F.3d 1425, 1430 (7th Cir. 1994).

The disjointed, piecemeal presentation of Jones' Complaint, as well as its length, results in a pleading that is largely unintelligible, and forces the Court to "forever sift through its pages" in order to parse out the claims that Jones apparently seeks to assert.  For these reasons, the Complaint shall be dismissed without prejudice.  However, Jones shall have an opportunity to amend his pleading in order to correct these problems.

## **The Complaint**

The Complaint was submitted in two parts. The first section (filed as Doc. 1) consists of 20 pages. On separate pages, the Complaint lists both Jones and his former co-Plaintiff Russell as Plaintiffs; Jones and Russell each include overlapping lists of Defendants. (Jones: Doc. 1, pp. 2-3, 5-6; Russell: Doc. 1, pp. 9). Both Jones and Russell signed the Complaint below the prayer for relief on page 7, which states that they seek monetary damages. Two pages in Doc. 1 contain cursory references to Jones' claims for deliberate indifference to a medical condition, interference with legal mail, and denial of recreation (Doc. 1, pp. 5, 7), but the remainder of this section does not contain any factual allegations set forth by Jones. (Doc. 1, pp. 10-20). The entire factual narrative beginning on page 10 of Doc. 1 is identified with former co-Plaintiff Russell's name, for example: "I as Lekedrieon Russell pressed the intercom multiple times to get a C/O in my as Lekedrieon Russell['s] room to help a[n] inmate that tried to commit suicide[.]" (Doc. 1, p. 10). Russell's only mention of Jones is on page 14, where Russell states that he asked for himself, Jones, and another cellmate to be allowed out of the cell for recreation, and mentions that Jones requested cleaning supplies for the cell they shared. (Doc. 1, p. 14). Other than those references, Jones' name does not appear in the statement of claim contained in Doc. 1. (Doc. 1, pp. 10-20).

As background information to some of Jones' potential claims, Russell's section of the Complaint (Doc. 1) explains that another inmate (Joshua Heart) who shared the jail cell with Russell and Jones attempted to commit suicide by cutting his wrists on March 29, 2017. (Doc. 1, pp. 13, 16, 18). Heart was an admitted drug user. The cell was contaminated with Heart's blood, which was not cleaned up for 4 days, during which time Russell and presumably Jones were exposed to it. (Doc. 1, pp. 5, 16). For several days after that incident, Russell asked to be

4

allowed out of the cell for recreation, but was refused. (Doc. 1, pp. 14, 18).

The second section of the Complaint (filed as Doc. 1-1) contains 70 pages, starting with a cover page bearing Jones' name and address. The remainder of this second document relates only to Jones' claims. The second page of Doc. 1-1 consists of a copy of a photograph of purported drug evidence seized from Jones' home, with handwritten commentary and allegations surrounding the photo (such as "false report," "cruel and unusual punishments," and claims that officers lied about the testing of the substance). (Doc. 1-1, p. 2). This page is identical to a page contained in another Complaint filed by Jones in a different action pending in this Court, *Jones v. Mooney*, Case No. 17-cv-337-JPG (filed April 3, 2017) (Doc. 1, p. 6 in that case).[1] Jones continues on pages 3-4 with a narrative describing the search of his room by Officers Mooney and Greenwood on February 13, 2017, which culminated in his arrest. (Doc. 1-1, pp. 3-4). Many of these allegations overlap with matters raised in Case No. 17-337. However, in the present case, Jones raises a new and distinct allegation that after Mooney ordered another unidentified officer to put Jones in handcuffs, that officer applied the handcuffs so tightly that Jones' hands became badly swollen, preventing jail officials from taking his fingerprints for 3 days after the arrest. (Doc. 1-1, p. 4). Jones also includes another list of the Defendants. (Doc. 1-1, p. 7).

The remainder of the 70 pages in Doc. 1-1 consists of many piecemeal handwritten statements, presented in no discernible order, interspersed with copies of documents such as police reports from Jones' arrest, excerpts from the Illinois Constitution, receipts from purchases at the jail, jail menus, the state court order setting bond after Jones' arrest, and pages from a

---

[1] In *Jones v. Mooney*, Case No. 17-cv-337-JPG, the undersigned Judge determined that Jones stated two potential civil rights claims, but ruled that those claims must be stayed pursuant to the abstention doctrine of *Younger v. Harris*, 401 U.S. 37 (1971), as explained in *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013), until Jones' state criminal case is concluded. (Doc. 12 in No. 17-337, entered May 24, 2017).

motion for leave to proceed *in forma pauperis*.

Jones' narrative portions include some description of Jones being exposed to blood from the cellmate's suicide attempt and his inability to get cleaning supplies from unidentified jail staff. (Doc. 1-1, pp. 9, 12, 70). Jones also alleges that Edwards, McKensley,[2] Jeff, Spartegues, and/or Roberts opened his incoming legal mail and read his outgoing legal mail, and/or mishandled forms relating to Jones' legal work and his attempts to sign over mail to his mother or receive mail from her. (Doc. 1-1, pp. 11, 14, 20-21, 44-45, 59). He claims that jail officials (possibly Scott, Mount, Haynes, and/or Shirley) delayed and denied medical care for acid burns Jones had sustained before his arrest. (Doc. 1-1, pp. 23, 25, 42-43, 47, 50-51, 63). He asserts that he was denied out-of-cell recreation by Roberts, and possibly by Haynes and/or other unidentified officers, a denial that may have lasted as long as 40 days. (Doc. 1-1, pp. 13, 22, 61).

Jones mentions a number of other complaints about the jail conditions, such as Roberts turning the TV off; not receiving adequate clothing; being exposed to cold temperatures and blinking lights in the cell; being housed in Block F which had black mold in the showers, rusty drinking water, and insect infestation; and being served spoiled milk and a wet sandwich. (Doc. 1-1, pp. 13, 16, 18, 43, 48, 55, 59, 63). In 3 different places, Jones includes a narrative about another inmate's confrontation with Haynes. Jones witnessed their interaction, but does not assert a violation of his own constitutional rights in connection with the incident. (Doc. 1-1, pp. 20-21; 46; 67).

## **Discussion**

As explained in the order severing former co-Plaintiff Russell's claims into a separate action (Doc. 10), the Court finds it convenient to characterize Jones' claims which remain in this *pro se* action into the following counts. Counts 1-4 were the claims raised by Russell which

---

[2] There is no "McKensley" listed as a Defendant, however, Jones includes a C/O McKenneth as a party.

have been severed into a separate case. The original numbering of Jones' claims below (Counts 5-11) shall be retained for purposes of clarity. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 5:** Excessive force claim against the unidentified officers who arrested Jones on February 13 or 14, 2017, for applying handcuffs to Jones' wrists so tightly that his hands were swollen for several days;
>
> **Count 6:** Deliberate indifference claim against unidentified jail staff for the failure to provide Jones with medical testing for communicable diseases following his exposure to a cellmate's blood after the cellmate's suicide attempt;
>
> **Count 7:** Deliberate indifference claim against unidentified jail staff for the failure to provide Jones with cleaning supplies or to clean the areas in and near his cell that were contaminated with blood;
>
> **Count 8:** Deliberate indifference claim against Scott, Mount, Haynes, and Nurse Shirley for failing to provide Jones with medical treatment for burns and cuts on his arms sustained before his arrest;
>
> **Count 9:** First Amendment claim for the improper opening and destruction/loss of Jones' legal mail, against Edwards, Spartegues, Jeff, and Roberts;
>
> **Count 10:** Deliberate indifference claim against Haynes and Roberts for the failure to permit Jones to leave the cell for recreation;
>
> **Count 11:** Deliberate indifference claim against unidentified jail staff for placing Jones in a cell with insufficient heat, bedding, or clothing; exposing him to black mold, rusty drinking water, and insects; and serving him spoiled milk and soggy food.

The Court has attempted to identify Jones' potential claims listed above with as much clarity as possible given the disjointed, repetitive, piecemeal, non-chronological, and confusing manner in which Jones presented his lengthy pleading. However, the Court shall not inflict this Complaint on the Defendants, because it flagrantly violates the pleading requirements of Federal

Rule of Civil Procedure 8(a)(2) and 8(d)(1).  This pleading is the opposite of "a short and plain statement of the claim," and is anything but "simple, concise, and direct."  FED. R. CIV. P. 8(a)(2); (d)(1).  To the contrary, the Complaint as currently pled would require the Defendants to endlessly sift through the more than 70 pages of documents in order to discern which claims are asserted against them and which facts support those claims.  This will present great difficulty for the Defendants to prepare a responsive pleading, and for the Court to conduct orderly litigation.  *See Vicom, Inc. v. Harbridge Merch. Serv., Inc.*, 20 F.3d 771, 775-76 (7th Cir. 1994); *see also U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud.").

Because of these problems, the Complaint shall be dismissed without prejudice for failure to comply with Rule 8 of the Federal Rules of Civil Procedure.  Jones shall be allowed an opportunity to submit an amended complaint, to correct the deficiencies in his pleading.  If the amended complaint does not comply with Rule 8 or with the instructions below, if it fails to state a claim, or if Jones does not submit an amended complaint, the entire case shall be dismissed with prejudice.  Such a dismissal may count as a strike pursuant to § 1915(g).  The amended complaint shall be subject to review under § 1915A.

Furthermore, Jones is **ADVISED** that unrelated claims against different Defendants are subject to severance into separate cases (where a new filing fee shall be imposed) if the Court determines that they were improperly joined in the same action.  The Seventh Circuit directs that such unrelated claims belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act.  *George v. Smith*, 507 F.3d 605, 607 (7th

Cir. 2007) (citing 28 U.S.C. § 1915(b), (g)).  It appears at this juncture that the claim designated as Count 5 above may be severable from the other claims under the *George* rule, because Count 5 arose during Jones' February 2017 arrest at the hands of officers who appear to have had no later contact with him.  The other claims (Counts 6-11) arose later, after Jones was incarcerated at the jail.  Some of the jail-related claims may also be severable from one another.  In his amended complaint, Jones may choose to omit one or more claims if he does not wish to incur a new filing fee as a result of this severance requirement.

## Pending Motions

Jones' motion for leave to proceed *in forma pauperis* ("IFP") shall be addressed in a separate order, after he submits his inmate trust fund statement in accordance with the order at Doc. 13.

Jones has filed two motions for recruitment of counsel (Docs. 3 and 7).  The dismissal of the Complaint without prejudice raises the question of whether Jones is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases.  *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant.  *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own.  *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)).  If so, the Court must examine "whether the difficulty of the case—

9

factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

The first motion (Doc. 3) was filed jointly by Jones and former co-Plaintiff Russell. It discloses that Jones has made no efforts to secure counsel on his own. It is impossible to tell from the motion whether the answers regarding educational level and psychiatric medications pertain to Jones or Russell. (Doc. 3, p. 2). Jones' individual motion for counsel (Doc. 7) similarly reveals no attempts whatsoever on his part to obtain legal representation. He points to his limited education (which he does not detail) and matters that might require expert testimony, as grounds for the recruitment of counsel. (Doc. 7, pp. 1-2).

Based on these motions, the Court concludes that Jones has failed to make reasonable efforts to obtain counsel on his own, which is sufficient reason to deny the motions. Further, despite Jones' limited education, his documents reflect that he is articulate and capable of stating the relevant facts and his legal claims. At this stage, Jones merely needs to organize his amended complaint in a coherent manner, state the facts that support each claim he wishes to pursue, clearly identify which Defendants are connected with each distinct claim, and state what each individual Defendant did (or failed to do) that violated his rights. Only Jones has knowledge of these facts, and no legal training is required to set them down on paper. Therefore, the recruitment of counsel is not warranted at this time. Both motions (Docs. 3 and 7) are

**DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

The Court reserves ruling on the motion for service of process at government expense (Doc. 4) until such time as Jones submits an amended complaint.

## Disposition

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to comply with Rule 8(a) and (d) of the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Jones shall file his First Amended Complaint within 28 days of the entry of this order (on or before **July 10, 2017**). It is strongly recommended that Jones use the form designed for use in this District for civil rights actions. He should label the pleading "First Amended Complaint" and include Case Number 17-cv-349-JPG. The amended complaint shall present each claim in a separate count, using the numbers as designated by the Court above. In each count, Jones shall specify, *by name*,[3] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Jones should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions. As noted above, if Jones does not wish to pursue any of the claims designated above as Counts 5-11, he may omit the claim(s) from the amended complaint.

An amended complaint supersedes and replaces the original Complaint, rendering the original Complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1

---

[3] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

(7th Cir. 2004). The Court will not accept piecemeal amendments to the original Complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Jones' claims and must stand on its own, without reference to any other pleading. Should the First Amended Complaint not conform to these requirements, it shall be stricken. Jones must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.

If Jones fails to file an amended complaint in accordance with the instructions set forth in this Order, this case shall be subject to dismissal with prejudice for failure to comply with an order of the Court. *See* FED. R. CIV. P. 41(b). Jones may also incur a "strike" within the meaning of § 1915(g) if his complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted. No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

In order to assist Jones in preparing his amended complaint, the Clerk is **DIRECTED** to mail Jones a blank civil rights complaint form.

Finally, Jones is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 12, 2017**

*s/J. Phil Gilbert*
United States District Judge
